**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BATTALION RESOURCES, LLC | ) | Case No. 16-18917 TBM |
| EIN: 27-4944324, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| STORM CAT ENERGY (USA) OPERATING | ) | |
| CORPORATION | ) | Case No. 16-18920 TBM |
| EIN: 20-2561097, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| STORM CAT ENERGY (POWDER RIVER), LLC | ) | Case No. 16-18922 TBM |
| EIN: 20-2561157, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| STORM CAT ENERGY ACQUISITIONS, LLC | ) | Case No. 16-18925 TBM |
| EIN: 45-3126793, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | **Jointly Administered under** |
| | ) | **Case No. 16-18917** |

**ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND A SALE HEARING, APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF**

1

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the bidding procedures attached to the Motion as **Exhibit 1** (the "Bidding Procedures"), (b) approving the Bid Protections in connection with the sale of substantially all assets of the Debtors (the "Purchased Assets"), (c) approving the form and manner of notice of the Auction and the Sale Hearing with respect to the Purchased Assets, and (d) scheduling an Auction and a Sale Hearing; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, **THE COURT FINDS THAT**:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The bases for the relief requested in the Motion are: (i) sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); (ii) Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iii) Rules 2002-1, 6004-1, and 9013-1 of the Court's Local

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

Bankruptcy Rules, Forms and Appendix (the "Local Rules").

D.      Notice of the Motion has been given to: (i) the Office of the United States Trustee for the District of Colorado (the "U.S. Trustee"); (ii) the administrative agent under the Debtors' prepetition credit facility; (iii) all creditors on each Debtor's list of creditors with the 20 largest unsecured claims; (iv) the United States Attorney's Office for the District of Wyoming; (v) the Internal Revenue Service; (vi) the Environmental Protection Agency; (vii) the office of the Attorney General for the State of Wyoming; (viii) the Securities and Exchange Commission; (ix) counsel to the Stalking Horse Bidder; (x) all known holders of liens, encumbrances, and other claims secured by the Purchased Assets as reflected on each Debtor's Schedule D filed as required by Section 521(a)(1)(A) of the Bankruptcy Code; (xi) the United States Bureau of Land Management; (xii) the Wyoming Office of Surface Lands and Investments; (xiii) the Wyoming Department of Environmental Quality; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; (iii) approve the procedures for the assumption and assignment of the Assigned Contracts, including notice of proposed Cure Amounts; and (iv) grant the Breakup Fee and Expense Reimbursement as provided in the Stalking Horse Purchase Agreement and in this Order.

F.      The Breakup Fee and the Expense Reimbursement: (i) shall, if triggered, be deemed actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Sale

and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to better and higher offers; and (iv) are necessary to induce the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Purchase Agreement.

G.      The Breakup Fee, the Expense Reimbursement, and the Minimum Overbid (together, the "Bid Protections") were a material inducement to, and express condition of, the Stalking Horse Bidder's willingness to submit a bid through execution of the Stalking Horse Purchase Agreement that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, regulators, and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that, given the circumstances, the best possible price for the Purchased Assets will be received. Accordingly, the Bidding Procedures and the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

H.      The Bidding Procedures and the Stalking Horse Purchase Agreement were negotiated by the parties at arms' length and in good faith by the Debtors and the Stalking Horse Bidder.

I.      ***Assumption and Assignment Procedures***. The Motion, this Order, and the assumption and assignment procedures set forth herein are reasonably calculated to provide counterparties to any Assigned Contracts to be assumed by the Debtors and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Assigned Contracts, the procedures in connection therewith, and any Cure Amounts relating thereto.

J.      ***Sale Notice***. The sale notice, substantially in the form submitted with the Motion as proposed **Exhibit 2** (the "Sale Notice") ***(which shall be modified to include dates consistent***

4

*with this Order*), is reasonably calculated to provide interested parties with timely and proper notice of the proposed sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Purchased Assets to be sold; (v) instructions for promptly obtaining copies of the Stalking Horse Purchase Agreement; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable Purchase Agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; (vii) notice of the proposed assumption and assignment of Assigned Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Sale shall be required.

**IT IS HEREBY ORDERED THAT**:

1.     The Motion is granted as provided herein.

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.     Important Dates and Deadlines.**

3.     *Sale Hearing*. The Sale Hearing shall commence on **November 29, 2016, at 1:30 p.m.** (prevailing Mountain Time) before the Honorable Thomas B. McNamara, at the Court, 721 19th Street, Courtroom E, Denver, Colorado 80202.  Upon entry of this Order, the Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Purchase Agreement or other applicable Purchase Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order. The Sale Hearing may be adjourned by announcement

in open Court or on the Court's calendar without any further notice required.

4.      *Sale Objection Deadline*. Objections, if any, to the Sale must be made on or before **7 calendar days after the Bid Deadline, at 5:00 p.m. (prevailing Mountain Time)** (the "Sale Objection Deadline"). Objections must: (a) be in writing; (b) conform to the applicable

provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be actually received no later than the Sale Objection Deadline by the following parties (the "Notice Parties"):

| Counsel to the Debtors | The Debtors |
|---|---|
| Lindquist & Vennum LLP<br>600 17th Street, Suite 1800 South<br>Denver, Colorado 80202<br>Attn: Theodore J. Hartl, Harold G. Morris, Jr. | c/o Battalion Resources, LLC<br>1125 17th Street, Suite 2310<br>Denver, Colorado 80202<br>Attn: Christopher M. Naro |
| **The United States Trustee** | **Agent Under the Debtors' Prepetition Credit Facility** |
| Office of the United States Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Suite 12-200<br>Denver, Colorado 80202 | JP Morgan Chase Bank N.A.<br>Attn: Matthew Feldman<br>383 Madison Ave. Fl. 3<br>New York, New York 10179-0001 |
| **Counsel to the Stalking Horse Bidder** | |
| Moye │ White LLP<br>16 Market Square, 6th Floor<br>1400 16th Street<br>Denver, Colorado 80202<br>Attn: John Kellogg and Tim Swanson | |

5.      A party's failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable Purchase

6

Agreement, including the assumption and assignment of the Assigned Contracts to the Successful Bidder pursuant to the applicable Purchase Agreement, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation, such assumption and assignment.

6. ***Bid Deadline***. The deadline by which all Bids for the Debtors' Purchased Assets must be ***actually received*** by the parties specified in the Bidding Procedures is 11:59 p.m. (prevailing Mountain Time), on **November 15, 2016** (the "Bid Deadline").

7. ***Auction***. **November 22, 2016 at 10:00 a.m.** (prevailing Mountain Time), is the date and time the Auction, if one is needed. Such Auction will be held at the offices of counsel to the Debtors: Lindquist & Vennum LLP, 600 17th Street, Suite 1800 South, Denver, Colorado 80202, or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids. As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be permitted to participate at the Auction.

**II. Auction, Bidding Procedures, and Related Relief.**

8. The Bidding Procedures, substantially in the form submitted with the Motion as proposed **Exhibit 1** (***except that all dates shall be modified to be consistent with this Order***) are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Purchased Assets. Any party desiring to bid on the Purchased Assets shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

9. The Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid.

10. If the Debtors do not receive any Qualified Bids (other than the Stalking Horse

Bid): (a) the Debtors will not hold the Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Purchased Assets; and (c) the Debtors shall be authorized to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.

11.     If the Debtors receive one or more Qualified Bids from Qualified Bidders (other than the Stalking Horse Bidder), then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

12.     Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures. The Auction shall be conducted openly.

13.     Subject to the terms of the Bidding Procedures, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to credit bid the value of the Breakup Fee and the Expense Reimbursement.

14.     The Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any Bid (other than the Stalking Horse Bid) that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; and (c) at or before the conclusion of the Auction, may impose such other terms and conditions upon Qualified Bidders (except the Stalking Horse Bidder) as the Debtors determine to be in the best interests of their bankruptcy estates.

15.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request or to

file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### III.   Breakup Fee and Expense Reimbursement.

16.   The Breakup Fee and the Expense Reimbursement are approved on the terms set forth in the Stalking Horse Purchase Agreement. The Debtors are authorized to pay any and all such amounts owing to the Stalking Horse Bidder on account of the Breakup Fee and the Expense Reimbursement in accordance with the terms of the Stalking Horse Purchase Agreement without further action or order by the Court and as and when due and payable under the Stalking Horse Purchase Agreement.

17.   The Breakup Fee and the Expense Reimbursement (if payable under the Stalking Horse Purchase Agreement in accordance with its terms and the terms of this Order, and until such Breakup Fee and Expense Reimbursement are paid) shall be an allowed administrative expense claim in the Debtors' chapter 11 cases pursuant to sections 503(b)(1) and 507(a)(2).

### IV.   Assumption and Assignment Procedures.

18.   The following procedures regarding the assumption and assignment of the Assigned Contracts in connection with the Sale are approved to the extent set forth herein, and shall govern the assumption and assignment of all Assigned Contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder following the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code under the Stalking Horse Purchase Agreement or other applicable Purchase Agreement.

19.   *Notices for Assigned Contracts*. As soon as practicable, the Debtors shall serve on all non-Debtor counterparties to any Assigned Contract (the "Assigned Contract Counterparties") that may be assumed by the Debtors and assigned to the Successful Bidder an

"Assigned Contract Notice," substantially in the form submitted with the Motion as proposed **Exhibit 3** (*except that all dates shall be modified to be consistent with this Order*), that identifies, to the extent applicable: (a) the Assigned Contract that may be assumed and assigned; (b) the name of the non-Debtor counterparty to such Assigned Contract; (c) the Debtors' asserted Cure Amount for such Assigned Contract if it becomes assumed and assigned; (d) the deadlines by which any such Assigned Contract Counterparty must file an objection (each, an "Assigned Contract Objection") to the proposed Cure Amount, assumption and assignment, or adequate assurance; (e) identifying the Stalking Horse Bidder; and (f) providing Assigned Contract Counterparties with the Stalking Horse Bidder's assurance of future performance; provided that the presence of an Assigned Contract on an Assigned Contract Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease; *provided, further*, that the presence of an Assigned Contract on the Assigned Contract Notice or Assumption Notice shall not prevent the Debtors from subsequently withdrawing such request for assumption or rejecting such Assigned Contract at any time before such Assigned Contract is actually assumed and assigned pursuant to an Order of the Court. Such Assigned Contract Notice shall be without prejudice to the Stalking Horse Bidder's rights under the Stalking Horse Purchase Agreement to subsequently exclude such items from assumption and assignment or add additional items.

20.     As soon as practicable after the Bid Deadline, the Debtors shall file with the Court and serve on the Assigned Contract Counterparties who are parties to an Assigned Contract to be assumed and assigned a further notice substantially in the form submitted with the Motion as proposed **Exhibit 4** (*except that all dates shall be modified to be consistent with this Order*) (the "Assumption Notice") identifying all Qualified Bidders each of whom will be permitted to participate in the Auction, stating which Assigned Contracts may be assumed and

assigned, and for any parties who have filed an Assigned Contract Objection providing such parties with the Qualified Bidders' assurance of future performance. To the extent the Debtors subsequently identify prior to the Sale Hearing any additional Assigned Contracts to be assumed by the Debtors and assigned to the Successful Bidder, the Debtors shall serve on any counterparty to such Assigned Contract the Assigned Contract Notice and/or Assumption Notice, as applicable, as soon as practicable. Such counterparty shall have ten (10) days from service of the Assigned Contract Notice and/or Assumption Notice, as applicable, to file an objection to the proposed Cure Amount or assumption and assignment of its Assigned Contract in accordance with the procedures set forth herein.

21.     ***Objections to Assumption of Assigned Contracts***. Any Assigned Contract Counterparty that objects to the cure or assignment of its Assigned Contract (the "Objecting Party") shall file an Assigned Contract Objection pursuant to the following procedures:

- ***Assigned Contract Objection***. All Assigned Contract Objections to the Cure Amounts listed in the Assigned Contract Notice, the Debtors' ability to assume or assign an Assigned Contract, or adequate assurance of future performance solely by the Stalking Horse Bidder shall be filed with the Court by 4:00 p.m. (prevailing Mountain Time) ten (10) days from service of the Assigned Contract Notice or any amendment or supplement to the Assigned Contract Notice.

- ***Supplemental Adequate Assurance Objection***. All Assigned Contract Objections to adequate assurance of future performance of Assigned Contracts by any Successful Bidder other than the Stalking Horse Bidder shall be filed with the Court at or prior to the Sale Hearing; provided that for Assigned Contract Counterparties identified on any supplemental Assumption Notice issued by the Debtors after the initial Assumption Notice, such parties shall have ten (10) days from service of such notice to file such Assigned Contract Objection.

- ***No Objection***. If no Objection is received in accordance with the deadlines set forth above, such Assigned Contract Counterparty: (a) shall be deemed to have consented to the Cure Amount and assumption and assignment of its Assigned Contract to the Successful Bidder; (b) shall be forever barred, estopped, and enjoined from asserting any additional Cure Amount under the Assigned Contract; and (c) shall be forever barred from objecting to the assignment of the Assigned Contract to the Successful Bidder or the

adequacy of the Successful Bidder's assurance of future performance.

- ***Resolution Period***. If any timely filed Assigned Contract Objection cannot be resolved by the Successful Bidder and the Objecting Party, the Court shall resolve such Assigned Contract Objection prior to assumption and assignment of such Assigned Contract, and upon entry of an order by the Court resolving such Assigned Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the date such Objecting Party receives the Assumption Notice. To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Stalking Horse Bidder's or other Successful Bidder's reasonable discretion, and until such time as the Assigned Contract Objection can be resolved, the Assigned Contract shall be conditionally assumed and assigned pending a resolution of the Assigned Contract Objection after notice and a hearing.

- ***Form of Objections***. Assigned Contract Objections must: (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Amount, including applicable and appropriate documentation in support of such alleged Cure Amount; and (c) comply with the Bankruptcy Rules and the Local Rules.

**V.      Sale Hearing Notice.**

22.      The Sale, substantially in the form submitted with the Motion as proposed

**Exhibit 2** (***modified to include dates consistent with this Order***) is hereby approved. On or

within **two (1) business days** following entry of this Order, the Debtors shall cause the Sale

Notice to be served on: (a) the U.S. Trustee; (b) counsel to the Stalking Horse Bidder; (c) the

Assigned Contract Counterparties; (d) all parties who have expressed a written interest in some

or all of the Purchased Assets; (e) all parties who are known or reasonably believed, after

reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Purchased

Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h)

all the Debtors' other creditors; (i) the United States Bureau of Land Management; (j) the

Wyoming Office of State Lands and Investments; (k) the Wyoming Department of

Environmental Quality; (l) any other governmental agency that is known to the Debtors to be an

interested party with respect to the Sale and transactions proposed thereunder; (m) all other parties who were served with notice of the Motion; and (n) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

## VI.    Miscellaneous.

23.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

24.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

25.    This Court exclusive retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  October 24, 2016                    BY THE COURT:


_____
Thomas B. McNamara,
United States Bankruptcy Judge

13

14